**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **AARON M.,**[1] | ) | **NO. EDCV 19-0746-KS** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| **ANDREW M. SAUL,**[2] **Commissioner** | ) | |
| **of Social Security,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**INTRODUCTION**

Aaron M. ("Plaintiff") filed a Complaint on April 23, 2019, seeking review of the denial of her application for a period of disability and disability insurance ("DI") and supplemental security income ("SSI"). On July 24, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 14.) On January 29, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 21.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for further

---

[1]     Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]     The Court previously ordered that the caption be amended to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action. (Dkt. No. 18.)

proceedings. (Joint Stip. at 32.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 32-33.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In November 2015 and February 2016, Plaintiff, who was born on January 7, 1986, protectively filed applications for DI and SSI respectively.[3] (*See* Administrative Record ("AR") 15, 186, 188; Joint Stip. at 2.) Plaintiff alleged disability commencing March 2, 2014 due to "severe anxiety" and "acute stress disorder." (AR 186, 188, 213.) Plaintiff previously performed the following occupations: video editor (DOT 962.262-010); school photographer (DOT 143.062-030); and camera operator (DOT 143.062-022). (AR 24, 52-54, 214.) The Commissioner denied Plaintiff's applications initially (AR 81-82) and on reconsideration (AR 107-08). Plaintiff then requested an administrative hearing. (*See* AR 127-28.) On March 1, 2018, Administrative Law Judge Paula M. Martin (the "ALJ") held a hearing at which Plaintiff, who was represented by counsel, testified as did vocational expert Randi Hetrick (the "VE"). (AR 32-58.) On April 11, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (AR 15-26.) On February 19, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (AR 17.) The ALJ further found that, although Plaintiff had worked after the alleged onset of his disability, he had not engaged in substantial gainful activity since the alleged onset date of March 2, 2014. (AR 17.) The ALJ determined that

---

[3] Plaintiff was 28 years old on the alleged onset date and was thus defined as a younger person under agency regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

Plaintiff had the following severe impairments: "generalized anxiety disorder (GAD); major depressive disorder (MDD); and Asperger's Syndrome or Autism spectrum disorder without language or intellectual impairment." (AR 18.) The ALJ considered whether Plaintiff's mental impairments met or medically equaled the criteria of listings 12.04, 12.06, and 12.10 but ultimately concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 18.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: "[H]e is limited to simple, routine, repetitive tasks while being capable of making simple work-related decision[s]. He is able to tolerate few changes in the work setting and he is able to have occasional contact with supervisors, co-workers, and the public." (AR 20.)

The ALJ found that Plaintiff was unable to perform his past relevant work. (AR 24.) However, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of industrial cleaner (DOT 381.687-018), hand packager (DOT 920.587-018), and laundry laborer (DOT 361.687-018). (AR 25-26.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of her decision, April 11, 2018. (AR 26.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than

a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

\\
\\
\\
\\

## DISCUSSION

There are three issues in dispute: (1) whether the ALJ properly evaluated the opinion of Plaintiff's treating mental health practitioner, Dr. Lee; (2) whether the ALJ erred by failing to consider whether the evidence supported a closed period of disability; and (3) whether the ALJ properly evaluated Plaintiff's statements about his symptoms and limitations. (Joint Stip. at 4.)

## I.   The ALJ's Assessment of the Opinion of Plaintiff's Treating Mental Health Practitioner

### A. Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Generally, the opinion of a treating source is entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (governing claims filed before March 27, 2017), 404.1520c(c) and 416.920c(c) (governing claims filed on or after March 27, 2017). Accordingly, to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir.

2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion *is* contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (emphasis added). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). An ALJ errs when he discounts a treating or examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### B. Medical Opinion at Issue

Plaintiff contends that the ALJ improperly discounted the opinion of his treating psychiatrist, Dr. Lamont R. Lee, Ph.D. (Joint Stip. at 4-5.) According to the license number provided by Dr. Lee, however, Dr. Lee is a licensed *psychologist*, not a licensed psychiatrist. (*See* AR 414 (identifying Dr. Lee's license number)); *see also* California Department of Consumer Affairs, DCA License Search, https://search.dca.ca.gov (last visited Feb. 11, 2020).

Nevertheless, the legible records in the Administrative Record indicate that Plaintiff saw Dr. Lee for mental health treatment approximately twice a month for three years. (*See* AR 21 (ALJ states that Plaintiff began receiving treatment with Dr. Lee in October 2014), 411 (first legible treatment note signed by Dr. Lee is from January 15, 2015), 477 (last legible treatment note signed by Dr. Lee is from December 7, 2017).) On November 28, 2016, after approximately two years of regular treatment, Dr. Lee wrote a detailed clinical assessment of Plaintiff. (AR 412-16.)

In his 2016 opinion, Dr. Lee stated that Plaintiff had been diagnosed with the following: Generalized Anxiety Disorder; Major Depressive Disorder, Recurrent, Moderate; and Autism Spectrum Disorder, without an Intellectual or Language Impairment. (AR 412.) Dr. Lee stated that, in his opinion, Plaintiff was unable to perform "a simple job on an eight hour per day, five day a week or equivalent schedule," with a "simple job" defined as entailing "completing one or two step processes" without the use of judgment or significant decision-making. (AR 412.) Dr. Lee explained that, due to the combined effects of Plaintiff's diagnoses, "[Plaintiff] is unable to manage his emotions and behavior for the extended periods of time required of full-time employment, even to work a simple job." (AR 412.) Dr. Lee further opined that Plaintiff "can usually not maintain his concentration, persistence, and pace to perform job related tasks for more than 15 minutes, and he definitely would not be able to maintain working for more than 30 minutes. [Plaintiff] would then need to remove himself from the location for a minimum of 30-60 minutes to calm himself before he could consider resuming work." (AR 412.)

In response to a question about Plaintiff's ability to work in proximity with others, including customers and the general public, Dr. Lee responded: "[Plaintiff] has major social impairments as a result of the severity of his anxiety and autism, such as difficulty with eye contact and with reciprocal communications, so working collaboratively in proximity to others would be impossible for him. [Plaintiff's] severe anxiety causes him to shut down completely, so I cannot imagine him succeeding in any work environment." (AR 413.) Similarly, Dr. Lee provided the following opinion:

> [Plaintiff] has demonstrated an impaired ability to think and respond appropriately when asked for assistance with minor tasks. As a result of his inability to think and ask clarifying questions, [Plaintiff] rarely has a full understanding of what is being asked of him, which causes him even more anxiety. [Plaintiff] would thus avoid interactions with anyone he perceived

7

to be in a leadership role and would be unable to function or have a normal working relationship with supervisors at a job site.

(AR 413.)

When asked about Plaintiff's ability to comply with normally accepted standards of punctuality and attendance, Dr. Lee answered that "the severity of [Plaintiff's] anxiety and autism would make it impossible for him to function reliably." (AR 413.) Dr. Lee opined that Plaintiff would be "an inconsistent, unreliable employee" and "would not respond well to changes in assignments or work schedules." (AR 413.) Finally, when asked whether Plaintiff's activities of daily living suggested an ability to perform work activities, Dr. Lee answered, "No, . . . [h]e can do activities of daily living at home because he feels safe and less anxious there, but in any other environment he gets triggered, shuts down, and becomes mentally and emotionally dysfunctional after a short period of time." (AR 413-14.)

## C. ALJ's Decision

The ALJ rejected Dr. Lee's assessment that Plaintiff: was unable to perform a simple job (*i.e.*, complete one or two step processes without the use of judgment); was unable to manage his emotions and behavior for extended periods of time; was unable to reliably maintain concentration, persistence, and pace for more than 15 minutes and maintain working for more than 30 minutes; would need to remove himself from a work location for 30-60 periods after about 30 minutes of work; was unable to work collaboratively in proximity to others; rarely has a full understanding of what is being asked of him; would be unable to have a normal working relationship with supervisors; and would be "an inconsistent, unreliable employee." Instead, the ALJ determined that Plaintiff could perform a full range of work consisting of "simple, routine, repetitive tasks," but with no limitation on his ability to make

8

"simple work-related decision[s]," "few changes in the work setting," and "occasional contact with supervisors, co-workers, and the public." (AR 20.)

The ALJ cited the following reasons for discounting significant portions of Dr. Lee's opinion: (1) "they are vague, conclusory, and not supported by the treatment notes," which show only two instances when Plaintiff became overwhelmed and had to isolate himself to calm down as well as consistently unremarkable mental status examinations and improved functionality, as evidenced by Plaintiff's ability to work a part-time job since October 2017, go to comic-Con, learn a new visual design program, go to a wedding, run errands, and go shopping with his girlfriend; (2) they appear based in large part on Plaintiff's subjective complaints and not clinical findings; and (3) contrary to Dr. Lee's opinions that Plaintiff would be unable to function in a workplace, work collaboratively in proximity with others, or have a working relationship with supervisors, Dr. Lee encouraged Plaintiff to find a job and Plaintiff reported "improvement in his mood and self-esteem *because* he was working." (AR 23 (citing, *inter alia*, AR 477 (12/7/17 – Plaintiff is less anxious now that he is working 20 hours a week around not too many people and more positive with better self-esteem), 478, 480).)

### D. Discussion

#### 1. Dr. Lee's Opinion That Plaintiff is Unable to Perform Simple Tasks for More than 15-30 Minutes and Understand What is Asked of Him

Dr. Lee's opinion that Plaintiff is unable to perform simple tasks for more than 15-30 minutes and understand what is asked of him is at odds with the opinions of the reviewing psychological consultants who determined that Plaintiff "is able to understand, remember, and carry out simple instructions for 2-hour intervals during a 40-hour workweek". (*See* AR 22; *see also id.* 65-66, 89-91.) Accordingly, the ALJ only needed to articulate specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Lee's

opinions that Plaintiff would be unable to perform simple tasks for more than 15-30 minutes and understand what is asked of him. *See Trevizo*, 871 F.3d at 675.

As stated above, the ALJ discounted these portions of Dr. Lee's opinion because, *inter alia*, "they are vague, conclusory, and not supported by the treatment notes." (AR 23.) An ALJ may properly reject a treating physician's conclusions that are "inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion). The ALJ's rationale with respect to this portion of Dr. Lee's opinion is supported by substantial evidence in the record.

Indeed, Plaintiff's treatment notes from Dr. Lee reflect that, back in August 2015, before Plaintiff started to improve as a result of medication and regular treatment, Plaintiff was able to secure a part time job. (AR 391.) Additionally, approximately six months later, after starting Abilify, Plaintiff was able to apply for and obtain a visual effects job through Craigslist. (AR 382.) Plaintiff quit the visual effects job two days later, after he became frustrated with the "laborious work" (AR 382), but the act of searching and applying for, and ultimately securing, employment indicates that, contrary to Dr. Lee's opinion, Plaintiff was able to maintain concentration, persistence, and pace for more than 15 minutes, maintain work for more than 30 minutes, and understand what is asked of him. Further, as the ALJ mentioned, in 2017, Plaintiff was able to secure a part-time (20-hour a week) job working at an AirSoft store in Oceanside on promotional videos. (*See* AR 477-80.) At least for a period, Plaintiff reported having less anxiety, more positivity, and better self-esteem because he was working again. (AR 477.)

There are also repeated references in Dr. Lee's treatment notes to Plaintiff's participation in a variety of complex tasks and yard work. In August 2015, before starting

medication, Plaintiff reported shooting and editing a video for school. (AR 390.) In April 2016, Plaintiff worked on fixing his computer and did yard work. (AR 378.) In May 2016, Plaintiff spent multiple days constructing a brick wall at his parents' house. (AR 370, 572, 570.) Further, with changes in his medication dosages during that period, Plaintiff reported that he was experiencing less and less frustration with the wall construction over the course of the month. (AR 370, 572, 570.) In August 2016, Plaintiff reported learning a new visual design program. (AR 553.) In September 2016, Plaintiff also reported working on a landscaping project at his sister's house. (AR 545.) Like Plaintiff's repeated ability to apply for and obtain work, the complexity and variety of Plaintiff's tasks at home indicate that, contrary to Dr. Lee's opinion, he *retained* the ability to maintain concentration, persistence, and pace for more than 15 minutes, continue working for more than 30 minutes, and understand what is asked of him. (AR 553.) Accordingly, the ALJ did not err in discounting this portion of Dr. Lee's opinion on the grounds that it was inconsistent with the treatment notes.

### 2. Dr. Lee's Opinion that Plaintiff is Unable to Work Collaboratively in Proximity to Others

Similarly, Dr. Lee's opinion that Plaintiff is unable to work collaboratively in proximity to others is at odds with the opinions of the reviewing psychological consultants who determined that Plaintiff "is able to interact with coworkers and supervisors." (*See* AR 22; *see also id.* 65-66, 89-91.) Accordingly, the ALJ only needed to articulate specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Lee's assessment of Plaintiff's social functioning. *See Trevizo*, 871 F.3d at 675.

The ALJ found that Dr. Lee's assessment was conclusory and inconsistent with Dr. Lee's own treatment notes. Again, the Court agrees. Dr. Lee's treatment records indicate that

Plaintiff struggled with social activities but nevertheless demonstrated a greater level of social functioning than what Dr. Lee assessed.

In April 2016, Plaintiff ran errands at least four times during the course of a week and went on a five-mile hike with his girlfriend. (AR 376.) In May 2016, Plaintiff spent five hours fishing with his girlfriend at Oceanside Pier for her birthday (AR 572) and arranged a social event with strangers using Facebook (AR 570). Plaintiff subsequently reported, on May 31, 2016, that the Facebook event had gone well: he had played Airsoft with two friends and three other people whom he had never met before, and he was invited to play again with a different group. (AR 568.) Dr. Lee encouraged Plaintiff to start walking regularly, and Plaintiff estimated that he retained the functional capacity to leave the house for walks three to four times a week. (AR 572.) In November 2016, Plaintiff reported attending a wedding for two hours. (AR 536.) Less than a year later, Plaintiff was employed at the Oceanside Airsoft store and "very happy." (AR 481.) Plaintiff's ability to maintain a live-in girlfriend throughout the alleged period of disability, go for walks and run errands in public, attend a wedding for two hours, apply for and obtain employment on three different occasions, ultimately culminating in his successful employment at the Airsoft store in 2017, and organize a Facebook event with friends and strangers, play a game with these individuals, and receive an invitation to play with them again cannot be reconciled with Dr. Lee's opinion that Plaintiff was *wholly* unable to work collaboratively in proximity to others.

In reaching this conclusion, the Court does not mean to belittle the severity of Plaintiff's condition and his apparent limitations in social functioning. However, Dr. Lee opined that it would be "impossible" for Plaintiff to work collaboratively in proximity to others. (AR 413.) Dr. Lee's treatment notes simply do not support this extreme limitation. In light of the foregoing, the Court finds that the ALJ properly discounted Dr. Lee's opinions that Plaintiff was wholly unable to work collaboratively in proximity to others. *See Thomas*, 278 F.3d at 957; *Bayliss*, 427 F.3d at 1216.

### 3. Dr. Lee's Opinion that Plaintiff Is Unable to Reliably Conform with Normally Accepted Standards of Punctuality and Attendance

The ALJ also did not err in discounting Dr. Lee's opinion that Plaintiff would be unable to "reliably" conform with normally accepted standards of punctuality and attendance. (*See* AR 413.) Dr. Lee did not specify how often Plaintiff would likely be absent from, or late to, work as a result of his mental impairments (*see generally id.*), and the reviewing psychologists assessed no significant limitations in Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (*id.* at 66, 90). Accordingly, Dr. Lee's opinion is both vague and contradicted by the opinion of the reviewing psychologists. Further, Dr. Lee's treatment notes do not indicate that Plaintiff *ever* missed or was late to an appointment or that he missed or was late to other regularly scheduled activities. (*See generally* AR 370-89, 530-71.) Therefore, the ALJ correctly discounted Dr. Lee's opinion that Plaintiff would be unable to "reliably" conform with normally accepted standards of punctuality and attendance on the grounds that it is vague and conclusory and inconsistent with his clinical notes.

### 4. Dr. Lee's Opinion that Plaintiff Is Unable to Manage His Emotions and Behavior for Extended Periods of Time in Full-Time Employment

The Court nevertheless finds that Dr. Lee's clinical notes do support one of the functional restrictions he assessed—namely, that Plaintiff is unable to "manage his emotions and behavior for the extended periods of time required of full-time employment." (AR 413.) The reviewing psychologists reached a similar but more specific conclusion, opining that Plaintiff could only "understand, remember, and carry out simple instructions for *2-hour intervals* during a 40-hour workweek." (AR 66, 91) (emphasis added). The ALJ mentioned this opinion in her decision and indicated that she was crediting it (*see* AR 22), but she ultimately excluded it without explanation from her assessment of Plaintiff's RFC (*see*

13

*generally* AR 20). Because this portion of Dr. Lee's opinion is consistent with the opinions of the reviewing psychologists, the ALJ was required to articulate a clear and convincing reason supported by substantial evidence in the record for discounting it. *See Trevizo*, 871 F.3d at 675; *Ghanim*, 763 F.3d at 1160-61. The ALJ's decision, however, leaves it unclear as to whether the ALJ believed she was crediting the opinion (*see* AR 22) or discounting it as vague, conclusory, and not supported by the treatment notes (*see* AR 23). Regardless, the ALJ ultimately omitted the limitation from her assessment of Plaintiff's RFC, and the ALJ did not articulate a specific, clear, and convincing reason supported by substantial evidence for discounting it.

Furthermore, Dr. Lee's clinical notes support his opinion that Plaintiff cannot manage his emotions and behavior for extended periods in the context of full-time employment. Plaintiff reported that he had to leave a wedding after only two hours because of the symptoms of his mental impairments (AR 536) and had to leave the visual effects job he found through Craigslist after only two days because he found the work "laborious" (AR 382). He repeatedly reported to Dr. Lee that he became increasingly frustrated the longer it took him to perform tasks and, as a result, struggled to complete the projects he started, including fixing his computer (*see* AR 378), performing yard work (*see* AR 378, 370, 545), and repairing a sink (AR 549). Plaintiff also reported that, in July 2016, he had to leave a store and isolate himself in his car when a shopping trip took longer than he expected. (AR 564.) Finally, Dr. Lee's notes also indicate that Plaintiff has a history of hitting himself or punching holes in the wall when frustrated. (*See*, *e.g.*, AR 389 (9/17/2015 – Plaintiff pleased that he did not hit himself or the walls when he became frustrated angry over the last few days), 329 (7/9/2015 – Plaintiff reported having three good days and then having extreme agitation for six consecutive days, that resulted in him punching 10 different holes in his wall).)

Even when Plaintiff ultimately obtained part-time employment at an Airsoft store in October 2017, Plaintiff's ability to maintain this job was conditioned on the extraordinary

14

flexibility of its owner regarding Plaintiff's schedule and productivity. Specifically, the store owner reported that he knew Plaintiff personally from "before" and allowed Plaintiff to make his own schedule, take extra time off, and have modified work duties. (AR 284-85.) The store owner also reported that he held Plaintiff to a lower standard of productivity. (AR 284-85.) He added that Plaintiff can take "any day off" and most of his work "doesn't have deadlines." (AR 285.) Plaintiff described his work arrangements as, "I'm free to take breaks whenever I need. I don't have a set work schedule. He allows me to come in whatever days that I feel necessary." (AR 41.) Plaintiff added at the hearing, that, to accommodate his mental impairments, he had decided to decrease his work hours to below 20-hours a week. (*See* AR 41.)

Plaintiff's inability to manage his emotions and behavior for more than two-hour periods in the context of full-time employment is supported by other evidence in the record. Plaintiff's mother wrote that Plaintiff "is easily frustrated and can't complete tasks" (AR 238) and cannot cook because "too many steps cause a panic attack then anger" (AR 235). She reported that, in November 2015, she asked Plaintiff to sew superhero capes for his niece and nephew but "after multiple attempts, he could not complete the simple job because the frustration was causing him extreme anger." (AR 286.) In December 2015, Plaintiff's brother asked him to help install some laminate flooring in his home. (AR 286.) Plaintiff became so frustrated that he had to take multiple long breaks, extending a daylong project into a three-day project. (AR 286.) In January 2016, Plaintiff's sister asked him for some help installing a plank wall in her house. (AR 286.) Plaintiff wanted to design the plank wall first on the computer but became "very frustrated and angry" with "extreme anger problems," and the project, which should have taken a few days, ended up taking two months. (AR 286.)

Further, in Plaintiff's Adult Function Report, he reported that he "can't complete tasks" and "get[s] angry and can't be around anyone." (AR 246.) Plaintiff's sister reported that, in December 2015, she asked Plaintiff to assemble a swing set. (AR 289.) It took Plaintiff more

15

than two months t to start the task, and she saw Plaintiff become very frustrated while working and have to repeatedly go to his car to calm down. (AR 289.) According to Plaintiff's sister, the swing set assembly, once started, should have taken Plaintiff and his girlfriend four to five hours but ended up taking two days. (AR 289.) At the hearing, Plaintiff testified that he believed he had to take three to four breaks, of 30-45 minutes each, during the course of a single day due to his frustration with assembling the swing set. (AR 46.) Plaintiff's sister reported witnessing Plaintiff experience similar problems with frustration and long breaks when performing other projects that she hired Plaintiff to perform around her home in 2016 and 2017. (AR 289-90.)

Even the hearing transcript itself reflects, that Plaintiff needed to take a break during questioning by the ALJ (*see*, *e.g.*, AR 50) and exhibited increased symptoms related to his mental impairments as well as difficulty talking during the hearing (*see*, *e.g.*, AR 44).

In light of the foregoing, the Court finds that the ALJ's determination that Dr. Lee's opinion that Plaintiff would be unable to manage his emotions and behavior in the context of full-time employment was inconsistent with his treatment notes was not supported by substantial evidence in the record and, therefore, cannot support her decision to discount this portion of Dr. Lee's opinion. The Court similarly finds that the ALJ's determination that this portion of Dr. Lee's opinion was based on Plaintiff's subjective complaints rather than clinical findings is not supported by substantial evidence in the record. Prior to issuing his November 2016 opinion, Dr. Lee consistently noted that Plaintiff avoided or exhibited only sporadic eye contact and exhibited slowed speech, guarded behavior, a dysphoric and/or anxious mood, a restricted affect, and poor insight, which are consistent with his assessment of Plaintiff's ability to manage to his emotions. (*See*, *e.g.*, AR 387 (1/13/2016), 385 (1/26/16), 383 (3/9/2016), 381 (3/29/2016), 379 (4/5/2016), 377 (4/12/2016), 375 (4/19/2016), 373 (4/26/2016), 369 (5/10/2016), 569 (5/24/2016), 565 (6/21/2016), 563 (7/5/2016), 559 (7/19/2016), 554 (8/2/2016), 550 (8/16/2016), 548 (8/23/2016), 544 (9/15/2016), 538

(10/20/2016), 536 (11/2/2016).)  Accordingly, the Court finds that none of the reasons that the ALJ provided for discounting the opinion of Dr. Lee and the reviewing psychologists that Plaintiff is unable to manage his emotions and behavior for more than two-hour periods in the context of full-time employment are clear, convincing, and supported by substantial evidence in the record.  Accordingly, the matter is remanded, and, on remand, the ALJ shall either credit this opinion or articulate a clear and convincing reason supported by substantial evidence in the record for discounting it.

## II.    The ALJ's Assessment of Plaintiff's Statements about his Symptoms and Limitations

### A.  Plaintiff's Statements

Having determined that a remand is warranted in connection with the ALJ's assessment of Dr. Lee's opinion, the Court exercises its discretion not to reach the second issue in dispute—whether the ALJ erred in failing to consider a closed period—and instead considers whether the ALJ properly assessed Plaintiff's statements about his symptoms and limitations. There are two primary sources of Plaintiff's statements about his symptoms and limitations: a January 5, 2016 Adult Function Report; and his statements during the March 1, 2018 administrative hearing.

### 1.  January 5, 2016 Adult Function Report

In an Adult Function Report that Plaintiff, with the assistance of his mother, completed on January 5, 2016, Plaintiff reported experiencing "extreme anxiety when talking to other people, . . . which causes panic attacks."  (AR 241.)  He stated that when he is "under stress" he loses the ability to concentrate, remember, and communicate, which causes extreme anger and a need for self-isolation.  (AR 241.)  On a daily basis, he reported looking for jobs and

playing video games or watching TV "to try to turn down my mind." (AR 242.) He reported that he provides transportation for his girlfriend who does not drive and cares for three cats and a chinchilla. (AR 242.)

Plaintiff indicated that, because of his mental impairments, he is unable to work with other people, go into crowds, hang out with friends, or have any social life. (AR 242.) He reported that previously he had belonged to Star Wars costume clubs and spent time with friends. (AR 245.) Plaintiff also indicated that his mental impairments have reduced his motivation to shower and shave and he only does these activities every few days. (AR 242.) He indicated that three times a week, "if his girlfriend can't do it," he prepares his own meals—namely, frozen dinners, sandwiches, cereal, and chicken nuggets. (AR 243.) Despite the simplicity of these meals, Plaintiff stated that their preparation takes him up to an hour because he has "a hard time following instruction." (AR 243.)

Plaintiff reported that, with reminders, he performed household chores for two to four hours a week, including vacuuming, laundry, handling the cat litter, dusting, and mowing. (AR 243.) He reported that he goes outside once a day to pick up the mail, once a week (for about an hour) for shopping, once a week for therapy, and once every other week to mow the lawn. (AR 244.) He reported that, depending on "the stress involved," he is "sometimes" able to go out by himself, but he needs his mom to go with him to therapy and his girlfriend to go to the store with him. (AR 244.) Plaintiff reported that he needs his mom to go with him to therapy because he "can't remember what to say or what they tell [him]." (AR 245.)

Plaintiff indicated that his ability to pay attention depends on the activity—he could pay attention for the duration of a movie "fine" but, in "a meeting or other work," his attention span was limited to 30 minutes. (AR 246.) He stated that he needs to read written instructions a few times before attempting to follow them and can only remember ¼ to ½ of spoken

18

instructions if stressed.  (AR 246.)  He reported that he handles changes in routine very poorly and it sometimes takes months to adjust.  (AR 247.)

In the Remarks section of the Adult Function Report, Plaintiff described two instances when he had a panic attack in a public place:  "I went into Souplantation and had a panic attack because I couldn't figure out how to go through the line"; and "I went into Wal-Mart one night to buy groceries and had to call my mom because I didn't know how to pick out bananas and was hiding in another aisle because there were people by the bananas."  (AR 248.)

### 2.  March 1, 2018 Administrative Hearing

At the March 1, 2018 administrative hearing, Plaintiff testified that he had started working part time for an acquaintance who, at the time of hiring, was aware of Plaintiff's difficulties with working, including Plaintiff's difficulties with managing social interactions and stress.  (AR 39-41.)  However, Plaintiff also reported that he had dropped down from working 24 hours a week to only 20 hours a week.  (*Id.*)  Plaintiff also testified that he was allowed to take breaks whenever he needed them in this job and could determine his own schedule, which ultimately resulted in Plaintiff working 1:00-5:00pm Monday, Tuesday, Friday, and Saturday.  (AR 41-42.)  Plaintiff also reported that he did not really talk with his supervisor or boss at his current job.  (AR 45.)

Plaintiff seemed to struggle when asked to talk about his prior video effects work for 3D Legends (*see e.g.*, AR 43-44) and had the following exchange with his attorney:

[Plaintiff's Counsel]:     You're having some trouble talking about it this morning.  Is that right?

[Plaintiff]:                     Yes.

| | | |
|---|---|---|
| [Plaintiff's Counsel]: | Is this typical, or is just today that we're here and having a hearing. |
| [Plaintiff]: | No, it's pretty common. |

(AR 44.)

Plaintiff also testified about the frustration he experienced when he was working with his girlfriend to assemble a swing set for his sister in December 2015. (AR 46; *see also id.* 289.) He testified that his girlfriend was able to work on the swing more quickly than Plaintiff because Plaintiff was struggling with reading and following the written instructions. (AR 46.) Plaintiff fell behind and, as a result, he ended up "snapping and yelling" and needed to "take a lot of breaks," three or four in a single day, "just to try to calm [himself] down." (AR 46.) To calm down, Plaintiff went to sit in his car for 30-45 minutes. (AR 46.)

When asked about his social life, Plaintiff testified that he had none but that he complied with his therapist's directions "to get out." (AR 46-47.) Accordingly, he had met some people online through different groups to play Airsoft and, over three years, had played Airsoft approximately five times for four hours each time. (AR 47.) Plaintiff testified that he does not spend a lot of time with family, mostly stays to himself, and only goes out for what he needs. (AR 48.)

Plaintiff confirmed in his testimony that his condition had been improving, and, specifically, that he was having fewer angry outbursts, possibly a result of a medication adjustment and/or Plaintiff's avoidance of certain situations. (AR 48-49.) At one point in his testimony, however, Plaintiff stated that he needed a "minute" to take a break. (AR 50.)

## B. ALJ's Decision

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent" with: (1) the medical evidence; and (2) other evidence in the record, which showed that Plaintiff was able to use coping skills and had improved with medication to such an extent that "he currently has a part-time job and has been able to be engaged in highly social activities, such as attending Comic-Con, going to a wedding, playing Airsoft with friends and other enthusiasts," and is also able to "run errands, go shopping, and spend time with family." (AR 22.)

## C. Applicable Law

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

Significantly, general assertions that a claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must

specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra*, 481 F.3d at 750 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error where the ALJ "failed to identify the testimony she found not credible"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

In March 2016, the Commissioner promulgated Social Security Ruling ("SSR") 16-3p, which "makes clear what [Ninth Circuit] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about his pain and limitations by referring to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include: the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional limitations and restrictions." SSR 16-3p.

### D. Analysis

The purported inconsistency between Plaintiff's subjective complaints and the objective evidence is not, by itself, a legally sufficient reason for declining to credit Plaintiff's subjective symptom allegations. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); *Bunnell v. Sullivan*, 947 F.2d

341, 345 (9th Cir. 1991) (en banc) ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); SSR 16–3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Accordingly, the validity of the ALJ's assessment of Plaintiff's statements about his symptoms and limitations hinges on whether the ALJ's determination that Plaintiff's improvement, namely his development of coping skills through therapy and his response to medication, is a clear and convincing reason supported by substantial evidence in the record for discounting <u>all</u> of Plaintiff's statements about his symptoms.

Plaintiff's subjective complaints encompassed a range of limitations, including difficulty socializing and interacting with others, managing his emotions and frustration, and maintaining adequate persistence and pace. The ALJ did not specifically identify which of these limitations she found inconsistent with Plaintiff's medical improvement.

More troubling, Plaintiff alleged disability commencing March 2, 2014 and, in support of that allegation, provided an Adult Function Report completed in January 2016 and testimony at the March 2018 hearing (among other evidence). However, citing medical improvement, the ALJ discounted <u>all</u> of Plaintiff's statements in both his January 2016 report and March 2018 testimony about his symptoms and limitations. For support, the ALJ observed that Plaintiff: played Airsoft with a small group of people in May 2016[4] and on a handful of other occasions in the following three years (*see* AR 47, 568); in late fall of 2016, was able to attend a wedding for two hours before needing to leave (AR 536); in the summer of 2017, "force[d]" himself to attend with his girlfriend, and where he experienced "considerable

---

[4]     Plaintiff reported to Dr. Lee on May 24, 2016 that organizing an Airsoft play-day was "something he hadn't been able to do for 2 years even though he wanted to." (AR 570.)

anxiety" and a need for self-isolation (AR 497); and, in October 2017, obtained very flexible part-time work at an Airsoft store through an acquaintance (AR 477-80). In citing to these activities, the ALJ ignored that many of them were not evidence that Plaintiff was independently choosing to engage in activities at odds with his own assessment of his limitations but, rather, evidence that Plaintiff was complying with the treatment recommendations and goals articulated by his psychologist, Dr. Lee.[5] The ALJ also overlooked that Plaintiff struggled with many of these activities due to his mental impairments: he reported that he did not usually talk to the other Airsoft players; he had to leave the wedding after only two hours; he experienced considerable anxiety and, ultimately, had to isolate himself in his car for a period when he attended Comic-Con; and he had to reduce his part-time work schedule to 20 hours a week.

However, even accepting *arguendo* that these activities support the ALJ's finding of medical improvement, they do not establish, as the ALJ's decision necessarily implies, that for no period of 12 months or more following the alleged onset date of March 2, 2014 did Plaintiff experience the degree of limitations and symptomology he reported. To the contrary, these activities reflect Plaintiff's ability to engage in limited socializing beginning on a date more than two years *after* the alleged onset date. Accordingly, the Court finds that the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence in the record for finding that for no period of a year or more since the alleged onset date did

---

[5] Plaintiff testified that, although he effectively had no social life because of his mental impairments, he was nevertheless complying with his therapist's directions "to get out." (AR 46-47.) When asked about playing Airsoft with friends (AR 46), Plaintiff testified "They're people that I met Facebook, online, and different groups trying to get myself out there because my therapist says I have to get out. And I try to play it. I don't play very often, but when I do, I try to interact socially with people, but it's not very successful . . . I don't usually talk to anybody." (AR 47.) Indeed, the treatment notes leading up to that first Airsoft game in May 2016 show that Dr. Lee was discussing with Plaintiff "opportunities . . . to get out of the house more." (AR 572.) Subsequently, in August 2017, Dr. Lee listed "[g]et[ting] out at least twice a week" and "go[ing] on vacation with his girlfriend to Comic-Con" as treatment goals for Plaintiff. (AR 499.) In September 2017, Dr. Lee also added "look for work" to Plaintiff's treatment plan. (AR 491.) The following month Plaintiff obtained part-time work at the Airsoft store through an acquaintance, work which, as described above, involved an extraordinary degree of flexibility to accommodate Plaintiff's symptoms, limitations, and ongoing mental health treatment.

24

Plaintiff suffer from the deficits he alleged in social functioning, managing his emotions and frustration, and maintaining adequate persistence and pace.

Consequently, on remand, the ALJ will need to reconsider Plaintiff's statements about his symptoms and limitations and either credit those statements in full or specifically identify which statements she finds not credible and articulate clear and convincing reasons supported by substantial evidence for discounting those specific statements. The ALJ is also reminded that "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017. Accordingly, on remand, the ALJ may not "single[] out a few periods of temporary well-being from a sustained period of impairment and rel[y] on those instances to discredit [the claimant]." *Id.* at 1018. Instead, if the ALJ again finds that Plaintiff has demonstrated sufficient medical improvement to warrant discounting some of Plaintiff's statements, she must cite to data points in the record that "constitute examples of a broader development." *Id.*

## III.    Remand is Warranted

Based on the foregoing, the ALJ erred: (1) in her assessment of the medical opinion, seemingly shared by Dr. Lee and the reviewing psychologists, that Plaintiff is unable to manage his emotions and behavior for more than two-hour periods in the context of full-time employment; and (2) in her assessment of Plaintiff's description of his symptoms and limitations, particularly in the areas of interacting with others, managing his emotions and frustration, and maintaining persistence and pace.

25

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). A district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020, n.26. However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

In this case, the Court cannot say that further administrative proceedings would serve no useful purpose and, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020. This case, then, is not the "rare exception" in which the credit as true rule should be applied and the matter remanded for the calculation and award of benefits. *See Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017). Therefore, the Court remands for further consideration.

In reaching this decision, the Court has exercised its discretion not to reach the merits of Plaintiff's contention that the ALJ erred by failing to consider a closed period of disability. On reconsideration of the record, however, if the evidence supports a finding that Plaintiff could not engage in substantial gainful activity for a continuous period of at least 12 months but subsequently improved, the ALJ **must** consider whether a closed period is warranted. *See*

*Reynoso v. Astrue*, No. CV 10-04604-JEM, 2011 WL 2554210, at *6-7 (C.D. Cal. June 27, 2011)); *Johnson v. Astrue*, No. CV07-7263SS, 2008 WL 5103230, at *4 (C.D. Cal. Dec. 2, 2008). In assessing medical improvement, the ALJ may benefit from the testimony of a medical expert.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 12, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE